*Please return to Cashier*

*Rate. Alt. Bearing Account.* **ORIGINAL**

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 2/17/06

SECURITIES AND EXCHANGE COMMISSION,

              *Plaintiff,*

      *v.*

06 Civ. 1000 (LAP)

AMERICAN INTERNATIONAL GROUP, INC.,

              *Defendant.*

## FINAL JUDGMENT AS TO DEFENDANT

## AMERICAN INTERNATIONAL GROUP, INC.

The Securities and Exchange Commission having filed a Complaint, and Defendant

American International Group, Inc. ("Defendant") having entered a general appearance;

consented to the Court's jurisdiction over Defendant and the subject matter of this action;

consented to entry of this Final Judgment without admitting or denying the allegations of the

Complaint (except as to jurisdiction); waived findings of fact and conclusions of law; and waived

any right to appeal from this Final Judgment:

I.

**IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that Defendant and its

agents, servants, employees, attorneys, and all persons in active concert or participation with

them who receive actual notice of this Final Judgment by personal service or otherwise are

permanently restrained and enjoined from violating Section 17(a) of the Securities Act [15

U.S.C. § 77q(a)] in the offer or sale of any security by the use of any means or instruments of

transportation or communication in interstate commerce or by use of the mails, directly or indirectly:

(a)     to employ any device, scheme, or artifice to defraud;

(b)     to obtain money or property by means of any untrue statement of a material fact or any omission of a material fact necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; or

(c)     to engage in any transaction, practice, or course of business which operates or would operate as a fraud or deceit upon the purchaser.

## II.

**IT IS FURTHER ORDERED, ADJUDGED, AND DECREED** that Defendant and its agents, servants, employees, attorneys, and all persons in active concert or participation with them who receive actual notice of this Final Judgment by personal service or otherwise are permanently restrained and enjoined from violating, directly or indirectly, Section 10(b) of the Exchange Act [15 U.S.C. § 78j(b)] and Rule 10b-5 [17 C.F.R. § 240.10b-5], by using any means or instrumentality of interstate commerce, or of the mails, or of any facility of any national securities exchange, in connection with the purchase or sale of any security:

(a)     to employ any device, scheme, or artifice to defraud;

(b)     to make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading; or

(c)     to engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person.

2

## III.

**IT IS FURTHER ORDERED, ADJUDGED, AND DECREED** that Defendant and its agents, servants, employees, attorneys, and all persons in active concert or participation with them who receive actual notice of this Final Judgment by personal service or otherwise are permanently restrained and enjoined from violating Section 13(a) of the Exchange Act [15 U.S.C. § 78m(a)] or Rules 12b-20, 13a-1 or 13a-13 [17 C.F.R. §§ 240.12b-20, 240.13a-1 and 240.13a-13], by, directly or indirectly:

    (A)    failing to file with the Commission any report required to be filed with the Commission pursuant to Section 13(a) of the Exchange Act [15 U.S.C. §78m(a)], and the rules and regulations promulgated thereunder; or

    (B)    filing with the Commission a report required to be filed with the Commission pursuant to Section 13(a) of the Exchange Act [15 U.S.C. §78m(a)] and the rules and regulations promulgated thereunder that (1) contains an untrue statement of material fact; (2) fails to include, in addition to the information required to be stated in such report, such further material information as may be necessary to make the required statements, in light of the circumstances under which they are made, not misleading; or (3) fails to disclose any information required to be disclosed therein.

3

## IV.

**IT IS FURTHER ORDERED, ADJUDGED, AND DECREED** that Defendant and its
agents, servants, employees, attorneys, and all persons in active concert or participation with
them who receive actual notice of this Final Judgment by personal service or otherwise are
permanently restrained and enjoined from violating Section 13(b)(2) and 13(b)(5) of the
Exchange Act [15 U.S.C. § 78m(b)(2) and § 78m (b)(5)] and Rule 13b2-1 [17 C.F.R. §
240.13b2-1] by, directly or indirectly:

- (A) failing to make and keep books, records and accounts, which, in reasonable detail,
  accurately and fairly reflect the transactions and dispositions of the assets of an
  issuer;

- (B) failing to devise and maintain a system of internal accounting controls sufficient
  to provide reasonable assurances that
  - (1) transactions are executed in accordance with management's general or
    specific authorization;
  - (2) transactions are recorded as necessary to permit preparation of financial
    statements in conformity with generally accepted accounting principles, or
    any other criteria applicable to such statements, and to maintain
    accountability for assets;
  - (3) access to assets is permitted only in accordance with management's
    general or specific authorization; and
  - (4) the recorded accountability for assets is compared with the existing assets
    at reasonable intervals and appropriate action is taken with respect to any
    differences;

4

(C)    falsifying, or causing to be falsified, any book, record or account subject to
Section 13(b)(2)(A) of the Exchange Act [15 U.S.C. § 78m(b)(2)(A)], or

(D)    knowingly circumventing or knowingly failing to implement a system of internal
accounting controls or knowingly falsifying any book, record, or account
described in Section 13(b)(2) of the Exchange Act  [15 U.S.C. § 78m(b)(2)].

## V.

**IT IS FURTHER ORDERED, ADJUDGED, AND DECREED** that Defendant shall
disgorge $700,000,000 representing profits gained as a result of the conduct alleged in the
Complaint, pursuant to Section 21(d)(5) of the Exchange Act [15 U.S.C. § 78u(d)(5)] and pay a
civil penalty in the amount of $100,000,000 pursuant to Section 20(d) of the Securities Act
[15 U.S.C. § 77t(d)] and Section 21(d)(3) of the Exchange Act [15 U.S.C. § 78u(d)(3)].
Defendant shall satisfy this obligation by paying a total of $800,000,000 within ten business days
after the entry of this Final Judgment to the Clerk of this Court by means of a wire transfer,
certified check, bank cashier's check, or United States postal money order payable to the Clerk
of the Court, together with a cover letter identifying American International Group, Inc. as a
defendant in this action; setting forth the title and civil action number of this action and the name
of this Court; and specifying that payment is made pursuant to this Final Judgment.  Defendant
shall simultaneously transmit photocopies of such payment and letter to the Commission's
counsel in this action, Robert J. Keyes, U.S. Securities and Exchange Commission, Northeast
Regional Office, 3 World Financial Center, Room 4300, New York, New York 10281-1022.
Defendant shall pay post-judgment interest on any delinquent amounts pursuant to 28 U.S.C.
§ 1961.  By making this payment, Defendant relinquishes all legal and equitable right, title, and
interest in such funds, and no part of the funds shall be returned to Defendant.  The Clerk shall

deposit the funds into an interest bearing account with the Court Registry Investment System ("CRIS"). These funds, together with any interest and income earned thereon (collectively, the "Fund"), shall be held by the CRIS until further order of the Court. In accordance with 28 U.S.C. § 1914 and the guidelines set by the Director of the Administrative Office of the United States Courts, the Clerk is directed, without further order of this Court, to deduct from the income earned on the money in the Fund a fee equal to two percent of the income earned on the Fund. Such fee shall not exceed that authorized by the Judicial Conference of the United States.

The Commission shall by motion, subject to the Court's approval, propose a plan to distribute the Fund for the benefit of investors, including, but not limited to, some or all of the members of the putative class in any Related Investor Action, pursuant to the Fair Fund provisions of Section 308(a) of the Sarbanes-Oxley Act of 2002. Regardless of whether any such Fair Fund distribution is made, amounts ordered to be paid as civil penalties pursuant to this Judgment shall be treated as penalties paid to the government for all purposes, including all tax purposes. To preserve the deterrent effect of the civil penalty, Defendant shall not, after offset or reduction of any award of compensatory damages in any Related Investor Action based on Defendant's payment of disgorgement in this action, argue that it is entitled to, nor shall it further benefit by, offset or reduction of such compensatory damages award by the amount of any part of Defendant's payment of a civil penalty in this action ("Penalty Offset"). If the court in any Related Investor Action grants such a Penalty Offset, Defendant shall, within 30 days after entry of a final order granting the Penalty Offset, notify the Commission's counsel in this action and pay the amount of the Penalty Offset to the United States Treasury or to a Fair Fund, as the Commission directs. Such a payment shall not be deemed an additional civil penalty and shall not be deemed to change the amount of the civil penalty imposed in this Judgment. For purposes

6

of this paragraph, a "Related Investor Action" means a private damages action brought against

Defendant by or on behalf of one or more investors based on substantially the same facts as

alleged in the Complaint in this action, including but not limited to the lawsuits that have been

consolidated as *In re American International Group, Inc. Securities Litigation,* Master No. 04

Civ. 8142 (JES) (SDNY).

### VI.

**IT IS FURTHER ORDERED, ADJUDGED, AND DECREED** that the Consent is

incorporated herein with the same force and effect as if fully set forth herein, and that Defendant

shall comply with all of the undertakings and agreements set forth therein.

### VII.

**IT IS FURTHER ORDERED, ADJUDGED, AND DECREED** that this Court shall

retain jurisdiction of this matter for the purposes of enforcing the terms of this Final Judgment.

**SO ORDERED.**

Dated: FEB 16 , 2006
New York, New York

UNITED STATES DISTRICT JUDGE

2/16/06

## CONSENT AND UNDERTAKINGS OF DEFENDANT

## AMERICAN INTERNATIONAL GROUP, INC.

1.     Defendant American International Group, Inc. ("Defendant" or "AIG") waives service of a summons and the complaint in this action, enters a general appearance, and admits the Court's jurisdiction over Defendant and over the subject matter of this action.

2.     Without admitting or denying the allegations of the Complaint (except as to personal and subject matter jurisdiction, which Defendant admits), Defendant hereby consents to the entry of the Final Judgment in the form attached hereto (the "Final Judgment") and incorporated by reference herein, which, among other things:

> a. permanently restrains and enjoins Defendant from violation of Section 17(a) of the Securities Act of 1933 ("Securities Act"), Sections 10(b), 13(a), 13(b)(2)(A) and (B), and 13(b)(5) of the Securities Exchange Act of 1934 ("Exchange Act"), and Rules 10b-5, 12b-20, 13a-1, 13a-13, and 13b2-1;

> b orders Defendant to pay disgorgement in the amount of $700,000,000; and

> c. orders Defendant to pay a civil penalty in the amount of $100,000,000 under Section 20(d) of the Securities Act [15 U.S.C. § 77t(d)] and Section 21(d)(3) of the Exchange Act [15 U.S.C. § 78u(d)(3)].

3.     Defendant acknowledges that Commission shall by motion, subject to the Court's approval, propose a plan to distribute the disgorgement and civil penalty paid pursuant to the Final Judgment, together with any interest and income earned thereon, for the benefit of investors, including, but not limited to, some or all of the members of the putative class in any Related Investor Action, pursuant to the Fair Fund provisions of Section 308(a) of the Sarbanes-Oxley Act of 2002.  Regardless of whether any such Fair Fund distribution is made, the civil

8

penalty shall be treated as a penalty paid to the government for all purposes, including all tax purposes. To preserve the deterrent effect of the civil penalty, Defendant agrees that it shall not, after offset or reduction of any award of compensatory damages in any Related Investor Action based on Defendant's payment of disgorgement in this action, argue that it is entitled to, nor shall it further benefit by, offset or reduction of such compensatory damages award by the amount of any part of Defendant's payment of a civil penalty in this action ("Penalty Offset"). If the court in any Related Investor Action grants such a Penalty Offset, Defendant agrees that it shall, within 30 days after entry of a final order granting the Penalty Offset, notify the Commission's counsel in this action and pay the amount of the Penalty Offset to the United States Treasury or to a Fair Fund, as the Commission directs. Such a payment shall not be deemed an additional civil penalty and shall not be deemed to change the amount of the civil penalty imposed in this action. For purposes of this paragraph, a "Related Investor Action" means a private damages action brought against Defendant by or on behalf of one or more investors based on substantially the same facts as alleged in the Complaint in this action, including but not limited to the lawsuits that have been consolidated as *In re American International Group, Inc. Securities Litigation*, Master File No. 04 Civ. 8142 (JES) (SDNY).

4.    Defendant agrees to comply with the following undertakings:

    A. Retention of a Consultant

        1. AIG agrees to retain, pay for, and enter into an agreement with a consultant ("Consultant"), not unacceptable to the Commission Staff, in consultation with the Attorney General of the State of New York (the "Attorney General") and with the Superintendent of Insurance of the State of New York (the "Superintendent"), to conduct a comprehensive

9

examination and review of the areas specified below and to make recommendations to AIG's Board of Directors and the Commission Staff. The Consultant's compensation and expenses shall be borne exclusively by AIG, and shall not be deducted from any amount due under the provisions of the Final Judgment.

a.  The agreement shall provide that the Consultant examine:

i.  AIG's internal controls over financial reporting (the Consultant may, if appropriate, rely on AIG's independent accountant's attestation and report on management's assessment of the effectiveness of AIG's internal control structure and procedures pursuant to Section 404 of the Sarbanes-Oxley Act);

ii.  The organization and reporting structure of AIG's internal audit department and AIG's disclosure committee (which is described in Exhibit A);

iii.  The policies, procedures and effectiveness of AIG's regulatory, compliance and legal functions, including the operations of any committees established to review and approve transactions or for the purpose of preventing the recording of transactions or financial reporting results in a manner inconsistent with Generally Accepted Accounting Principles ("GAAP");

iv.  AIG's records management and retention policies and procedures;

10

     v.    The adequacy of whistleblower procedures designed to allow employees and others to report confidentially matters that may have bearing on AIG's financial reporting obligations;

     vi.   AIG's training and education program described in paragraph D.2, below;

     vii.  The reforms that AIG has implemented as a result of the Review, which are set forth in Exhibit A; and

     viii.  The adequacy and effectiveness of the remediation plan described in paragraph D.1 below.

B. Consultant's Reporting Obligations

1. The Consultant shall issue a report to AIG's Board of Directors and to the Commission Staff within three months of appointment, provided, however, that the Consultant may seek to extend the period of review for one or more additional three-month terms by requesting such an extension from the Commission's Staff. The Commission Staff, after consultation with the Attorney General and the Superintendent, shall have discretion to grant such extensions as it deems reasonable and warranted.

2. The Consultant's report shall set forth the Consultant's recommendations regarding best practices in the areas specified in paragraph 1.a.i through 1.a.viii above, including the Consultant's recommendations for any changes in or improvements to AIG's policies and procedures that the Consultant reasonably deems necessary to conform to the law and best

11

practices, and a procedure for implementing the recommended changes in or improvements to AIG's policies and procedures.

3. AIG shall adopt all recommendations contained in the report of the Consultant referred to in paragraph B.2 above, provided, however, that within forty-five days of receipt of the report, AIG shall in writing advise the Consultant and the Commission Staff of any recommendations that it considers to be unnecessary or inappropriate. With respect to any recommendation that AIG considers unnecessary or inappropriate, AIG need not adopt that recommendation at that time but shall propose in writing an alternative policy, procedure or system designed to achieve the same objective or purpose.

4. As to any recommendation with respect to AIG's policies and procedures on which AIG and the Consultant do not agree, such parties shall attempt in good faith to reach an agreement within ninety days of the issuance of the Consultant's report. In the event AIG and the Consultant are unable to agree on an alternative proposal, AIG will abide by the determinations of the Consultant.

5. AIG shall retain the Consultant for a period of three years from the date of appointment in accordance with the provisions of paragraph C below. Once the Consultant's recommendations become final, the Consultant shall oversee the implementation of such recommendations and provide a report to AIG's Board of Directors and to the Commission Staff every three months concerning the progress of such implementation. If, at the

12

conclusion of this three-year period, less than all recommended reforms have been substantially implemented for at least two successive quarters, the Commission Staff may, in its discretion after consultation with the Attorney General and the Superintendent, direct AIG to extend the Consultant's term of appointment until such time as all recommended reforms have been substantially implemented for at least two successive quarters.

C. Terms of Retention

Within forty-five days after the date of entry of the Final Judgment, AIG will submit to the Commission Staff a proposal setting forth the identity, qualifications, and proposed terms of retention of the Consultant. The Commission Staff, within thirty days of such notice, will either (1) deem AIG's choice of Consultant and proposed terms of retention not unacceptable or (2) require AIG to propose an alternative Consultant and/or revised proposed terms of retention within fifteen days. This process will continue, as necessary, until AIG has selected a Consultant and retention terms that are not unacceptable to the Commission Staff. AIG shall enter into an agreement with the Consultant that shall contain the following terms:

1. The Consultant shall provide AIG's Board of Directors and the Commission Staff with such documents or other information concerning the areas identified in paragraph A above, as any of them may request during the pendency or at the conclusion of the review.

13

2. The Consultant shall have reasonable access to all of the books and records of AIG and its subsidiaries and the ability to meet privately with the personnel of AIG and its subsidiaries. AIG may not assert the attorney-client privilege, the protection of the work-product doctrine, or any privilege as a ground for not providing the Consultant with contemporaneous documents or other information related to the matters that are the subject of the review. AIG shall instruct and otherwise encourage its officers, directors, and employees to cooperate fully with the review conducted by the Consultant, and inform its officers, directors, and employees that failure to cooperate with the review will be grounds for dismissal, other disciplinary actions, or other appropriate actions.

3. The Consultant shall have the right, as reasonable and necessary in his or her judgment, to retain, at AIG's expense, attorneys, accountants, and other persons or firms, other than officers, directors, or employees of AIG, to assist in the discharge of his or her obligations under the undertakings. AIG shall pay all reasonable fees and expenses of any persons or firms retained by the Consultant.

4. The Consultant shall make and keep notes of interviews conducted, and keep a copy of documents gathered, in connection with the performance of his or her responsibilities, and require all persons and firms retained to assist the Consultant to do so as well.

5. The Consultant's relationship with AIG shall not be treated as one between an attorney and client. The Consultant will not assert the

14

attorney-client privilege, the protection of the work-product doctrine, or any privilege as a ground for not providing any information obtained in the review sought by the Commission Staff.

6. If the Consultant determines that he or she has a conflict with respect to one or more of the areas described in paragraph A or otherwise, he or she shall delegate his or her responsibilities with respect to that subject to a person who is chosen by the Consultant and who is not unacceptable to the Commission Staff.

7. For the period of engagement and for a period of two years from completion of the engagement, the Consultant shall not enter into any employment, consulting, attorney-client, auditing or other professional relationship with AIG, or any of its present or former subsidiaries or affiliates, directors, officers, employees, or agents acting in their capacity as such; and shall require that any firm with which the Consultant is affiliated or of which the Consultant is a member, or any person engaged to assist the Consultant in performance of the Consultant's duties under the Final Judgment not, without prior written consent of the Commission Staff, enter into any employment, consulting, attorney-client, auditing or other professional relationship with AIG, or any of its present or former subsidiaries or affiliates, directors, officers, employees, or agents acting in their capacity as such for the period of the engagement and for a period of two years after the engagement. For the purposes of this section,

15

representation of a person or firm insured by AIG shall not be deemed a professional relationship with AIG.

8. AIG, including the Board of Directors and committees of the Board of Directors of AIG, shall not assert, or permit its subsidiaries to assert, the attorney-client privilege, the protection of the work-product doctrine, or any privilege as a ground for not providing to the Consultant any documents, information, or testimony that AIG provided to the Commission Staff which the Consultant has deemed necessary for his or her review.

9. The Consultant shall treat and maintain information of AIG and its subsidiaries as strictly confidential and shall not disclose such information other than to the Commission Staff, and to the Consultant's personnel, agents or representatives who need to know such information for the purpose of the review contemplated herein, or as otherwise required by law.

10. At the conclusion of the Consultant's engagement, subject to the approval of the Commission Staff, after consultation with the Attorney General and the Superintendent, the Consultant shall return to AIG all documents reflecting or referring to non-public business and financial information of AIG and its subsidiaries.

D. Additional Undertakings

1. Within four months after the entry of the Final Judgment, AIG will draft a remediation plan consisting of (i) steps to address and correct the causes of

16

the material weaknesses in internal controls over financial reporting as identified in AIG's 2004 Form 10-K; (ii) a program to test the operational effectiveness of new or enhanced controls; and (iii) completion of management's testing of the relevant significant controls.

2. AIG agrees that it will establish and maintain a training and education program, completion of which will be required for (a) officers, executives, and employees of AIG and its subsidiaries who are involved in the oversight of accounting and financial reporting functions; (b) all employees in AIG's legal division with responsibility for or oversight of AIG's accounting, financial reporting or disclosure obligations; and (c) other senior officers and executives of AIG and its subsidiaries, as proposed by AIG and approved by the Consultant (collectively the "Mandatory Participants").

3. The structure and operation of the training and education program shall be reviewed and approved by the Consultant. The training and education program shall be designed to cover, at a minimum, the following: (a) the obligations imposed on AIG by the federal securities laws, including AIG's financial reporting and disclosure obligations; (b) proper internal accounting controls and procedures; (c) discovering and recognizing accounting practices that do not conform to GAAP or that are otherwise improper; and (d) the obligations assumed by, and responses expected of, the Mandatory Participants upon learning of improper, illegal or potentially illegal acts relating to AIG's accounting and financial

17

reporting. The Board of Directors shall communicate to the Mandatory

Participants, in writing or by video, its endorsement of the training and

education program.

5.      Defendant waives the entry of findings of fact and conclusions of law pursuant to

Rule 52 of the Federal Rules of Civil Procedure.

6.      Defendant waives the right, if any, to a jury trial and to appeal from the entry of

the Final Judgment.

7.      Defendant enters into this Consent voluntarily and represents that no threats,

offers, promises, or inducements of any kind have been made by the Commission or any

member, officer, employee, agent, or representative of the Commission to induce Defendant to

enter into this Consent.

8.      Defendant agrees that this Consent shall be incorporated into the Final Judgment

with the same force and effect as if fully set forth therein.

9.      Defendant will not oppose the enforcement of the Final Judgment on the ground,

if any exists, that it fails to comply with Rule 65(d) of the Federal Rules of Civil Procedure, and

hereby waives any objection based thereon.

10.     Defendant waives service of the Final Judgment and agrees that entry of the Final

Judgment by the Court and filing with the Clerk of the Court will constitute notice to Defendant

of its terms and conditions. Defendant further agrees to provide counsel for the Commission,

within thirty days after the Final Judgment is filed with the Clerk of the Court, with an affidavit

or declaration stating that Defendant has received and read a copy of the Final Judgment.

11.     Consistent with 17 C.F.R. § 202.5(f), this Consent resolves only the claims

asserted against Defendant in this civil proceeding. Defendant acknowledges that no promise or

18

representation has been made by the Commission or any member, officer, employee, agent, or representative of the Commission with regard to any criminal liability that may have arisen or may arise from the facts underlying this action or immunity from any such criminal liability. Defendant waives any claim of Double Jeopardy based upon the settlement of this proceeding, including the imposition of any remedy. Defendant further acknowledges that the Court's entry of a permanent injunction may have collateral consequences under federal or state law and the rules and regulations of self-regulatory organizations, licensing boards, and other regulatory organizations. Such collateral consequences include, but are not limited to, a statutory disqualification with respect to membership or participation in, or association with a member of, a self-regulatory organization. This statutory disqualification has consequences that are separate from any sanction imposed in an administrative proceeding. In addition, in any disciplinary proceeding before the Commission based on the entry of the injunction in this action, Defendant understands that it shall not be permitted to contest the factual allegations of the complaint in this action.

12.     Defendant understands and agrees to comply with the Commission's policy "not to permit a defendant or respondent to consent to a judgment or order that imposes a sanction while denying the allegation in the complaint or order for proceedings." 17 C.F.R. § 202.5. In compliance with this policy, Defendant agrees: (i) not to take any action or to make or permit to be made any public statement denying, directly or indirectly, any allegation in the complaint or creating the impression that the complaint is without factual basis; and (ii) that upon the filing of this Consent, Defendant hereby withdraws any papers filed in this action to the extent that they deny any allegation in the complaint. If Defendant breaches this agreement, the Commission may petition the Court to vacate the Final Judgment and restore this action to its active docket.

Nothing in this paragraph affects Defendant's: (i) testimonial obligations; or (ii) right to take legal or factual positions in litigation or other legal proceedings in which the Commission is not a party.

13.     Defendant hereby waives any rights under the Equal Access to Justice Act, the Small Business Regulatory Enforcement Fairness Act of 1996, or any other provision of law to seek from the United States, or any agency, or any official of the United States acting in his or her official capacity, directly or indirectly, reimbursement of attorney's fees or other fees, expenses, or costs expended by Defendant to defend against this action. For these purposes, Defendant agrees that Defendant is not the prevailing party in this action since the parties have reached a good faith settlement.

14.     In connection with this action and any related judicial or administrative proceeding or investigation commenced by the Commission or to which the Commission is a party, Defendant (i) agrees to make its employees available for interviews with the Commission Staff at such times and places as the Commission Staff requests upon reasonable notice; (ii) will accept service by mail or facsimile transmission of notices or subpoenas issued by the Commission for documents or testimony at depositions, hearings, or trials, or in connection with any related investigation by Commission Staff; (iii) appoints Defendant's undersigned attorney as agent to receive service of such notices and subpoenas; (iv) with respect to such notices and subpoenas, waives the territorial limits on service contained in Rule 45 of the Federal Rules of Civil Procedure and any applicable local rules, provided that the Commission reimburses Defendant's travel, lodging, and subsistence expenses at the then-prevailing U.S. Government per diem rates; and (v) consents to personal jurisdiction over Defendant in any United States District Court for purposes of enforcing any such subpoena.

15.    Defendant agrees that the Commission may present the Final Judgment to the

Court for signature and entry without further notice.

16.     Defendant agrees that this Court shall retain jurisdiction over this matter for the purpose of enforcing the terms of the Final Judgment.

Dated: _2/1/06_

American International Group, Inc.

By: _____
Martin J. Sullivan
President and Chief Executive Officer

STATE OF _New York_ )
                                          ) ss.:
COUNTY OF _New York_ )

On _February 1_, 2006, _Martin J. Sullivan_, a person known to me, personally appeared before me and acknowledged executing the foregoing Consent with full authority to do so on behalf of American International Group, Inc. as its _Pres. & CEO_.

_Sandra A. Le Monds_

Notary Public
Commission expires:

SANDRA A. LeMONDS
Notary Public, State of New York
No. 01LE5059041
Qualified in New York County
Commission Expires April 22, 200_6_

Approved as to form:

_Martin Flumenbaum_

Martin Flumenbaum, Esq.
Paul, Weiss, Rifkind, Wharton & Garrison LLP
1285 Avenue of the Americas
New York, NY 10019-6064
(212) 373-3000
Attorney for Defendant

SO ORDERED:

_February 17, 2006_

_Loretta A. Preska_
U.S.D.J.

22

## EXHIBIT A

American International Group, Inc. ("AIG") represents that AIG's current senior management and its Board of Directors have taken or are taking corporate governance reforms, including, among other things:

a) ensuring that AIG's Audit Committee and Regulatory, Compliance and Legal Committee, respectively, will examine AIG's internal audit department and the compliance functions within AIG's legal department, including compliance with all of the terms and conditions of the Final Judgment;

b) ensuring that a disclosure committee is established to assist AIG's chief executive officer and chief financial officer in fulfilling their responsibility for oversight of the accuracy and timeliness of the disclosures made by AIG, that this committee includes among its members AIG's chief compliance officer, chief accounting officer and general counsel, and that the disclosure committee meets and confers prior to significant SEC filings and the issuance of earnings press releases;

c) establishing enhanced corporate governance procedures as are developed in discussions between the Consultant appointed pursuant to the Final Judgment, the board, and the nominating and corporate governance committee; and

d) establishing a general insurance risk-transfer policy and implementing practices and procedures for the evaluation of such risk transfer under GAAP and applicable insurance regulatory accounting principles.

## CORPORATE RESOLUTION

The undersigned, Kathleen E. Shannon the Senior Vice President and Secretary of American International Group. Inc. (hereinafter "AIG" or "the Corporation"). certifies that the following resolution was duly enacted at a meeting of the Board of Directors of AIG held on January 31, 2006 :

RESOLVED: That each of Martin J. Sullivan, the President of the Corporation, and Ernest T. Patrikis, the Senior Vice President and General Counsel of the Corporation, be and hereby is authorized to act on behalf of the Corporation, and to negotiate, approve, accept and execute the "Consent and Undertakings of American International Group, Inc." attached hereto, in connection with the investigation conducted by the Securities and Exchange Commission; in this connection, each of Martin J. Sullivan and Ernest T. Patrikis be and hereby is authorized to undertake such actions as he may deem necessary and advisable; including the execution of such documentation as may be required by the Securities and Exchange Commission in order to carry out the intent and purpose of the foregoing.

I further certify that the aforesaid resolution has not been amended or revoked in any respect and is still in full force and effect.

IN WITNESS WHEREOF, I have duly executed this Certificate as a sealed instrument as the duly elected, qualified and acting Senior Vice President and Secretary of American International Group, Inc., hereunto authorized this 7th day of February ,  ,
2006.

AMERICAN INTERNATIONAL GROUP, INC.

Dated: February 7, 2006

By: Kathleen E Shannon

Its:   Senior Vice President and Secretary

The parties entitled to be notified of the entry hereof and the names and addresses of their respective attorneys, if any, are:

Plaintiff:

    Ken C. Joseph, Esq.
    United States Securities and Exchange Commission
    Northeast Regional Office
    3 World Financial Center
    Room 4300
    New York, NY  10281-1022
    (212) 336-0097

Defendant:

    Martin Flumenbaum, Esq.
    Paul, Weiss, Rifkind, Wharton & Garrison LLP
    1285 Avenue of the Americas
    New York, NY 10019-6064
    (212) 373-3000